**In re DONALD HANFT,
M.D., P.A., Debtor.**

**Donald Hanft, M.D., P.A., and
Donald Hanft, M.D., jointly
and individually, Appellant,**

**v.**

**Suzanne Church, Appellee,**

**No. 02–21424–CIV.**

United States District Court,
S.D. Florida.

Sept. 10, 2002.

---

**55.** This Court may but does not have to impose conditions that run with the voiding of the mortgage.

Craig Z. Sherar, Coconut Grove, FL, for Plaintiff.

Kathe Kozlowski, Boynton Beach, FL, for Defendant.

Ron Neiwirth, Ft. Lauderdale, FL, for Debtor/Defendant.

## *ORDER GRANTING IN PART AND DENYING IN PART APPEAL FROM JUDGMENT AND OPINION OF BANKRUPTCY COURT*

LENARD, District Judge.

**THIS CAUSE** is before the Court on the Appeal from Bankruptcy Court's Judgment and Opinion with Respect to Non–Dischargeability of Debt, docketed May 10, 2002. (D.E. 1.) Appellant Donald

Hanft filed an Initial Brief on May 22, 2002. (D.E. 4.) Appellee Suzanne Church filed an Appellee's Brief on July 1, 2002. (D.E. 11.) Appellant filed a Reformatted Brief on July 3, 2002 (D.E. 12), and a Reply Brief on July 10, 2002 (D.E. 14). Having reviewed the briefs and the record, the Court finds as follows.

## I. Factual Background [1]

Appellant Donald Hanft received his license to practice medicine in Florida in 1970, and renewed it several times thereafter. In December, 1979, he failed to renew his medical license, and it expired and became inactive under Florida law. In February, 1989, Appellant corresponded with the Board of Medicine with respect to reactivating his license. On February 23, 1990, Appellant's license was reactivated after he paid a renewal fee and completed 203 hours of continuing medical education requirements. On October 14, 1991, the Florida Department of Professional Regulation filed an administrative complaint regarding Appellant's practice of medicine without an active license in violation of FLA. STAT. § 458.327(1)(a). The administrative complaint was resolved by a consent decree, which included a formal reprimand and imposition of a $5,000 fine against Appellant.

Between 1980 and 1991, Appellee Suzanne Church was a patient of Appellant. On repeated occasions in 1988, 1989, and 1991, Appellant diagnosed Appellee with a condition called post-pill amenorrhea. In 1993, Appellee visited an ophthalmologist and had an MRI, which revealed a tumor that affected her vision. On July 13, 1995, Appellee filed a medical malpractice lawsuit against Appellant. A default judg-

---

1. As the parties do not dispute the bankruptcy court's findings of fact, the Court only summarizes the relevant facts here.

ment was entered against Appellant, and the case went to a jury on the issue of damages. Appellee's expert testified that Appellant was negligent because he failed to perform certain customary tests in 1988 and 1989, which would have revealed the tumor at a time when it could have been treated. Instead, by the time the tumor was discovered, it had to be surgically removed. As a result, Appellee's vision was affected permanently, and she is unable to bear children. In December, 1998, a jury awarded Appellee a $250,000 verdict.

## II. Bankruptcy Court Proceedings

Appellant and his professional association filed for Chapter 7 bankruptcy on May 17, 1999. On August 17, 1999, Appellee filed a Complaint for non-dischargeability of her medical malpractice award. After the bankruptcy court denied Appellant's motion to dismiss, Appellant answered on October 5, 1999 and moved for summary judgment on November 23, 1999. Appellee filed a cross-motion for summary judgment on July 5, 2000.

On March 1, 2001, the bankruptcy court granted Appellant's motion for summary judgment on the Third Count of the Complaint, which asserted that Plaintiff's medical malpractice judgment represented a "willful and malicious injury to another" under 11 U.S.C. § 523(a)(6). The bankruptcy court ruled that Appellant's actions in this case were neither willful nor malicious, in that he did not intend to cause the injury that Appellee suffered. The remaining two counts were tried by the Honorable Larry Lessen, sitting by designation, on December 12, 2001. Judge Lessen

rendered an opinion on March 20, 2002, holding that the medical malpractice judgment was non-dischargeable under both 11 U.S.C. §§ 523(a)(2)(A) (for money, property, or services ... to the extent obtained by false pretenses, a false representation, or actual fraud) and 523(a)(4) (for fraud or defalcation while acting in a fiduciary capacity).

## III. Parties' Arguments on Appeal

Appellant argues that the bankruptcy court erred in three respects: (I) by holding that debt embodied in a state court medical malpractice judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(a); (2) in finding Appellee's default $250,000 medical malpractice judgment to be non-dischargeable under 11 U.S.C. § 523(a)(4), in that the Florida statute concerning financial responsibility of doctors is a regulatory statute which does not confer any private cause of action upon patients; and (3) in finding Appellee's default $250,000 medical malpractice judgment to be non-dischargeable under 11 U.S.C. § 523(a)(4), in that Appellant was not a fiduciary with respect to Appellee concerning any express, technical trust.

Appellee argues two points on appeal: (1) that Appellant's initial brief violates the page limitations set forth in the Local Rules;[2] and (2) that the Pre–Trial Order of the bankruptcy court limits the issues to be tried, and Appellant's first and second points are being raised for the first time on appeal.[3] Additionally, Appellee contends that the bankruptcy court was correct in its analysis of Appellee's claim for non-dischargeability.

---

2. Appellant has submitted a reformatted brief that complies with the formatting requirements of Local Rule 5.1 and does not exceed the 25–page limit of Local Rule 87.4(E)(2).

3. The Court finds that Appellant's arguments do not exceed the scope of appellate review, and the Court will consider them as necessary for a thorough review of the bankruptcy court's ruling.

## IV. Standard of Review

When reviewing a bankruptcy court's decision, a district court functions as an appellate court. *In re Williams*, 216 F.3d 1295, 1296 (11th Cir.2000). On appellate review, factual findings of a bankruptcy court are reviewed under the limited and deferential "clearly erroneous" standard. FED. R. BANKR. P. 8013; *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334–35 (11th Cir.2001). Determinations of law and application of the bankruptcy code, on the other hand, must be reviewed *de novo*. *Optical Techs.*, 246 F.3d at 1335.

## V. Analysis

Section 523(a) of the Bankruptcy Code provides, in relevant part:

A discharge under section 727 ... of this title does not discharge an individual from any debt—

(2) for money, property, services ... to the extent obtained by

(A) false pretenses, a false representation, or actual fraud ....

\* \* \* \* \* \*

(4) for fraud or defalcation while acting in a fiduciary capacity ....

11 U.S.C. §§ 523(a)(2) and (4).

### A. Section 523(a)(2)(A)

First, the Court must determine whether the malpractice judgment is a "debt" which can be excepted from discharge under sections 523(a)(2) and (4). The bankruptcy court answered that question in the affirmative, relying heavily on *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In *Cohen*, the Supreme Court made clear that the term "debt" is expansive in scope and held that an award of treble damages for fraud fell within the parameters of section 523(a)(2). *See id.* at 218–19, 118 S.Ct. 1212. The Supreme Court explained,

"Once it is established that specific money or property has been obtained by fraud ... 'any debt' arising therefrom is excepted from discharge." *Id.* at 218, 118 S.Ct. 1212. Where a landlord had received $31,382.50 in rent payments through fraud, the Supreme Court concluded that the "full liability traceable to that sum," i.e., the treble amount of $94,147.50, plus attorney fees and costs, fell within the section 523(a)(2) exception. *Id.* at 221, 118 S.Ct. 1212. Under *Cohen*, it is apparent that a judgment against a debtor that arises from a fraudulent act committed by the debtor constitutes "debt" under section 523. The crucial issue in the instant case, then, is whether the malpractice judgment "arises from" or is "traceable to" or is "a result of" a fraudulent act committed by Appellant.

For purposes of section 523(a)(2)(A), a creditor must prove that: (1) the debtor made a false representation with intent to deceive the creditor, (2) the creditor relied on the representation, (3) this reliance was reasonably founded, and (4) the creditor sustained loss as a result of the representation. *In re St. Laurent*, 991 F.2d 672, 676 (11th Cir.1993); *In re Berman*, 154 B.R. 991, 1001 (Bankr.S.D.Fla. 1993). In bankruptcy courts, "the willful misrepresentation of medical experience and expertise has been found to give rise to a non-dischargeable debt," in the form of a malpractice judgment, under section 523(a)(2)(A). *In re Doyan*, 204 B.R. 250 (Bankr.S.D.Fla.1996) (citing *Berman*, 154 B.R. at 1002).

The bankruptcy court found that Appellant knew his medical license was inactive when he treated Appellee in 1988 and 1989, that he made a conscious and deliberate decision to stop paying his medical license renewal fees, and that Appellant's testimony to the contrary was not credible. Appellant has presented no evi-

dence to contradict these findings. The Court agrees with the bankruptcy court that where Appellant failed to pay his fees not once, but repeatedly, over a ten-year period and failed to maintain his continuing medical education requirements throughout such time, his error cannot be attributed to a mere clerical error. The bankruptcy court also credited Appellee's testimony that she relied on Appellant's representation that he was a licensed doctor, that she observed numerous certificates, diplomas, and other documents on Appellant's walls that represented to her that he was licensed to practice medicine, and that she would not have consented to Appellant's treatment of her had she known that his license was inactive. The Court concurs with the bankruptcy court's conclusion that Appellee's reliance on these representations in allowing Appellant to treat her was justifiable.

■ Finally, the Court must determine the causation element, i.e., whether Appellee suffered a loss as a result of her reliance on Appellant's misrepresentation. Adopting the bankruptcy court's finding that but for Appellant's misrepresentations with respect to his medical license, Appellee would not have consented to treatment, the Court concludes that Appellee's injuries (the subject of the malpractice lawsuit) arose as a natural and proximate result of Appellant's misrepresentations. As one appellate bankruptcy court explains:

> When a creditor establishes that a debtor fraudulently induced the creditor to enter into a transaction by a representation that goes to the essence of the transaction, i.e., a debtor's training, competency or experience to complete the work contemplated by the transaction, the misrepresentation was a substantial factor in entering into the transaction, the debtor's work later appears defec-

tive, and the creditor suffers a loss, the creditor has established a *prima facie* case that the defects derive from the lack of professional qualifications of the debtor.

*In re Creta,* 271 B.R. 214, 220 (1st Cir. BAP 2002). Plainly, a doctor's representations with respect to his licensing go to the essence of a doctor-patient transaction, and the misrepresentation must be considered a substantial factor in a patient's choice to allow a doctor to treat her. Therefore, the Court concludes that Appellee's injuries and the malpractice judgment arising therefrom are a proximate result of Appellant's misrepresentation with respect to his licensing.

■ Although not all malpractice judgments result from fraud, the Court concludes that in the instant case the liability is traceable to Appellant's fraudulent representations with respect to his medical licensing, upon which Appellee relied when she consented to treatment by Appellant. Therefore, the debt is nondischargeable under section 523(a)(2)(A). This conclusion is consistent with bankruptcy policy because "[t]he general policy that exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor ... applies to honest debtors only." *St. Laurent,* 991 F.2d at 680. As the Supreme Court has stated, "it is unlikely that Congress would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." *Cohen,* 523 U.S. 213, 118 S.Ct. at 1219 (cites omitted).

## B. Section 523(a)(4)

■ A debt is nondischargeable under section 523(a)(4) if it is the result of fraud or defalcation while the debtor was acting in a fiduciary capacity. 11 U.S.C. § 523(a)(4). "Defalcation" refers to a failure to produce funds entrusted to a fidu-

ciary. *Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir.1993). For purposes of section 523(a)(4), the term "fiduciary" is not to be construed expansively; rather, it refers only to "express" or "technical" trusts that exist before the act of defalcation. *Id.* at 953 (citing *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *Upshur v. Briscoe*, 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891); *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). For a technical trust to exist, three elements must be present: (1) a segregated trust *res;* (2) an identifiable beneficiary; and (3) affirmative trust duties established by contract or statute. *In re Hutchinson*, 193 B.R. 61, 65 (Bankr. M.D.Fla.1996).

■ Florida's Financial Responsibility Act requires a medical practitioner, as a condition of licensing, to establish and maintain either an escrow account, professional liability coverage, or an irrevocable letter of credit, in an amount not less than $100,000 per claim, with a minimum aggregate of at least $300,000. FLA. STAT. § 458.320(1). The statute allows a doctor practicing with an active license who meets certain requirements to opt out of the requirements if he posts a sign informing patients, "Your doctor meets these requirements and has decided not to carry medical malpractice insurance." FLA. STAT. § 458.320(5)(f).[4]

The bankruptcy court found that the Financial Responsibility Act meets the three requirements for a technical trust, in that a segregated trust *res* is established by the statute, the identifiable beneficiaries are the doctors' patients whom they injure, and affirmative trust duties are created by the language of the statute, including "as a condition of licensing," demon-

strating "financial ability to pay claims," and "establishing and maintaining an escrow account." The bankruptcy court found that Appellant was not exempt from the statute's requirements because he did not possess an active license at the time he treated Appellee, and the statute permanently disqualifies any doctor from exemption if he commits deceptive, untrue, or fraudulent representations with regard to any provision of the statute, *see* FLA. STAT. § 458.320(6). The bankruptcy court found a sufficient link between Appellee's claim and the failure to maintain the fund and the exception to discharge under section 523(a)(4).

Upon review of the applicable case law, the Florida statute, and the facts of this case, the Court concludes that the bankruptcy court erred as a matter of law with respect to nondischargeability under section 523(a)(4). While the Eleventh Circuit made clear in *Quaif* that a fiduciary duty for purposes of section 523(a)(4) may be created by statute, the Court finds that Florida's Financial Responsibility Act creates neither a fiduciary duty nor a technical trust. *Cf. In re Pouliot*, 196 B.R. 641, 650–51 (Bankr.S.D.Fla.1996) (holding that the physician-patient relationship under Florida law does not create a technical trust which establishes a fiduciary capacity). The statute at issue in *Quaif* provided that an insurance agent receiving premiums must account for them in his fiduciary capacity, must not commingle them with personal funds, and must promptly account for and pay the funds to the person entitled to them. 4 F.3d at 953. The court determined that the statute created fiduciary duties sufficient to create a technical trust. *Id.* at 954–55. In contrast, Florida's Financial Responsibility Act does not

---

4. The bankruptcy court found that Appellant met the criteria, except that he was unli-

censed, and posted such a sign.

use the term "fiduciary capacity," nor does it require a doctor to place certain funds in trust for the benefit of certain parties. Plainly, the ultimate purpose of the statute is to ensure that patients will be reimbursed for successful malpractice claims, but that does not mean that the patients are "identifiable beneficiaries" as required for creation of a technical trust.

The definition of "defalcation" as "a failure to produce funds entrusted to a fiduciary," *Quaif,* 4 F.3d at 955, further compels the conclusion that FLA. STAT. § 458.320 does not create a fiduciary duty, because no funds are "entrusted" to a doctor under the statute. Instead, the doctor must establish and maintain an escrow account, insurance, or a line of credit as a condition of licensing, in order to "demonstrate to the satisfaction of the board and the department financial responsibility to pay claims ..." FLA. STAT. § 458.320(1). As all of these steps must be taken *before* a doctor receives any funds from patients, it cannot be said that funds are entrusted to the doctor for a patient's benefit. Consequently, the Court concludes that the Florida statute does not create a fiduciary duty, and the debt therefore does not fall under the nondischargeability provision of section 523(a)(4). Accordingly, it is

**ORDERED AND ADJUDGED** that:

1. The Appeal from the Bankruptcy Court's Judgment and Opinion with Respect to Non–Dischargeability of Debt, docketed May 10, 2002 (D.E. 1), is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

2. The Judgment and Opinion with Respect to Non–Dischargeability of Debt, issued by U.S. Bankruptcy Judge Larry Lessen (sitting by designation) on March 20, 2002, is **AFFIRMED IN PART** and **REVERSED IN PART**, consistent with this Order.

3. This case is **CLOSED.**

4. All motions not otherwise ruled upon by separate order are **DENIED AS MOOT.**