[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2006
THOMAS K. KAHN
CLERK

No. 06-10159
Non-Argument Calendar
_____

D. C. Docket No. 05-21275-CV-MGC
BKCY No. 00-40698-BKC-RAM

In Re: LUIS FERNANDEZ-ROCHA, MD,

Debtor.

_____

JORGE L. GUERRA,
GAYLE L. GUERRA,

Plaintiffs-Appellants,

versus

LUIS FERNANDEZ-ROCHA, MD,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 12, 2006)**

Before CARNES, HULL and PRYOR, Circuit Judges.

HULL, Circuit Judge:

Appellants Jorge and Gayle Guerra (the "Guerras") appeal the district court's order affirming the bankruptcy court's dismissal of their adversary complaint against Dr. Luis Fernandez-Rocha (the "Debtor") based on his failure to comply with Florida's Financial Responsibility Act, Florida Statutes § 458.320. On appeal, the Guerras challenge the bankruptcy court and district court's determination that the debt in issue is dischargeable in bankruptcy. After review, we affirm.

## I. BACKGROUND

### A. Death of Veronica Guerra

This appeal arises out of the tragic 1996 death of the Guerras' newborn daughter, Veronica Guerra. During Mrs. Guerra's pregnancy, the Guerras had agreed with the Debtor that he would deliver their baby. They further agreed that, in the event the Debtor was unable to deliver the Guerras' baby, one of his partners would attend to the birth and Dr. Lourdes Ramon, a junior associate of the Debtor's, would not be involved. Nevertheless, when Mrs. Guerra was admitted to the hospital, Dr. Ramon attended to the birth. According to the Guerras, as a result of Dr. Ramon's negligence, Veronica Guerra sustained injuries during the delivery

2

and died eleven days later.

**B.    State Court Action**

In Florida state court, the Guerras filed a malpractice action against both the Debtor and Dr. Ramon.  On February 13, 2004, the jury in the state court action returned a verdict in favor of the Guerras and against the Debtor and Dr. Ramon.  Specifically, the jury found: (1) that Dr. Ramon's negligence caused Veronica Guerra's death; (2) that there was no negligence by the Debtor with regard to Veronica Guerra's death; but (3) that the Debtor's breach of contract was a legal cause of Veronica Guerra's death.  The jury awarded the Guerras $4.2 million, and the Florida state court entered final judgment against the Debtor.

**C.    Bankruptcy Case and Adversary Proceeding**

Meanwhile, on December 1, 2000, the Debtor had filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").  On February 26, 2001, the Guerras filed in the bankruptcy case an adversary proceeding against the Debtor.  The Guerras' adversary complaint asserted that, pursuant to Florida Statutes § 458.320, the Debtor was obligated to establish a fund to pay claims arising out of his rendering of, or failure to render, medical care and services, and that the Debtor had a fiduciary duty to his patients to maintain a claims fund of $250,000 per claim or $750,000 in the aggregate.  The

Guerras alleged that the Debtor had not established the required fund and thus would not be able to pay the malpractice judgment against him. The Guerras essentially alleged that they had a non-dischargeable claim against the Debtor for the amount of the required claims fund to apply to the malpractice award.

More specifically, the Guerras asserted that their claim was non-dischargeable pursuant to § 523(a)(4) of the Bankruptcy Code. See 11 U.S.C. § 523(a)(4). Section 523(a)(4) provides that debts "for fraud or defalcation while acting in a fiduciary capacity" are non-dischargeable.[1]

On March 21, 2001, the bankruptcy court entered an order abating the adversary proceeding pending the resolution of the state court litigation. On September 9, 2002, the Debtor filed a motion to dismiss the Guerras' adversary complaint for failure to state a claim upon which relief could be granted or, in the alternative, for summary judgment. The Debtor argued, inter alia, that Florida Statutes § 458.320 is a regulatory statute and does not create a fiduciary duty or any technical trust between the Debtor and the Guerras, and thus the § 523(a)(4) exception to discharge does not apply to any debt between the Debtor and the

---

[1]Section 523(a)(4) provides: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt– (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. 523(a)(4).

4

Guerras.[2]  After a hearing, the bankruptcy court granted the Debtor's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

The Guerras appealed the bankruptcy court's dismissal to the district court, and the district court affirmed.  The Guerras now appeal to this Court.

## II. DISCUSSION

The Florida Financial Responsibility Act, Florida Statutes § 458.320, requires that to obtain a license a physician must maintain either malpractice insurance, or a letter of credit payable to the physician, or an escrow account of his own funds to demonstrate his financial responsibility in the event of a malpractice award against him.  See Fla. Stat. § 458.320(1).  As did the bankruptcy court and the district court, we accept the allegations of the Guerras' adversary complaint as true and will assume that the Debtor failed to comply with his obligations under § 458.320 and that there is no claims fund, malpractice insurance, or letter of credit to satisfy a portion of the Guerras' $4.2 million judgment against the Debtor.[3]

_____

[2]The Debtor also argued that Florida Statutes § 458.320 did not apply because the Guerras' verdict against him was for breach of contract and not negligence.  However, the bankruptcy court rejected this argument, and the Debtor does not raise this issue in this appeal.  Thus, we will assume that the Guerras' $4.2 million judgment against the Debtor for breach of contract would fall within the "rendering of, or failure to render, medical care and services" language of § 458.320.

[3]In an appeal from a district court sitting as an appellate court in a bankruptcy case, this Court employs the same standards of review as the district court.  IBT Int'l, Inc. v. Northern (In

5

Further, the Guerras' adversary complaint is not based on the Debtor's failure to obtain malpractice insurance or provide a letter of credit, but is based solely on the Debtor's not having established a claims fund under § 458.320 that could then be used to pay the Guerras' malpractice judgment. Thus, the only issue in this appeal is whether the Debtor's failure to maintain the claims fund under § 458.320 created a debt that falls within the § 523(a)(4) exception to discharge for debts for "defalcation while acting in a fiduciary capacity." We first review prior judicial interpretation of the § 523(a)(4) exception and then apply it to this case.

## A. Non-dischargeable Debts Under § 523(a)(4)

An individual debtor's pre-bankruptcy debts, including malpractice debts, are generally dischargeable in a Chapter 7 bankruptcy case, and exceptions to discharge are construed narrowly. 11 U.S.C. § 727(a), (b); Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994) ("[C]ourts generally construe the statutory exceptions to discharge in bankruptcy liberally in favor of the debtor and recognize that the reasons for denying a discharge must be real and substantial, not merely technical and conjectural.") (quotation marks, citations, and punctuation omitted); see also R.E. Am., Inc. v. Garver (In re Garver), 116 F.3d

re Int'l Admin. Servs., Inc.), 408 F.3d 689, 698 (11th Cir. 2005). We review de novo a dismissal for failure to state a claim, and like the bankruptcy court, we must accept the allegations in the adversary complaint as true and construe the facts in the light most favorable to the plaintiff. Hoffend v. Villa (In re Villa), 261 F.3d 1148, 1150 (11th Cir. 2001).

176, 179 n.6 (6th Cir. 1997) (noting that all types of professional malpractice claims generally are dischargeable under the Bankruptcy Code).

Although § 523(a)(4) establishes an exception to dischargeability for debts for "defalcation while acting in a fiduciary capacity," this exception is a narrow one. "The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993) (citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S. Ct. 151 (1934), and other Supreme Court cases interpreting previous versions of the § 523(a)(4) exception, but noting that all versions have referred to "defalcation" and to "fiduciary capacity" or "fiduciary character"); see Commonwealth Land Title Co. v. Blaszak (In re Blaszak), 397 F.3d 386, 391 (6th Cir. 2005) (noting that the term "fiduciary capacity" is construed more narrowly in the context of § 523(a)(4) than in other circumstances); see also Lee-Benner v. Gergely (In re Gergely), 110 F.3d 1448, 1450-51 (9th Cir. 1997) (noting that the doctor-patient relationship does not create a fiduciary relationship for purposes of § 523(a)(4)).

In Quaif, this Court further noted that the 1934 Davis decision is the last Supreme Court case to speak to the issue and that the Supreme Court has left "the lower courts to struggle with the concept of 'technical' trusts." Quaif, 4 F.3d at

953. Quaif also discussed the trends in judicial interpretation of the § 523(a)(4) exception and noted that courts seemed to include the voluntary, express trust created by contract within the scope of "fiduciary capacity" as used in § 523(a)(4). Id. In contrast, courts have excluded the involuntary resulting or constructive trust, created by operation of law, from the scope of the exception. Id. Additionally, Quaif noted that cases have "also articulated a requirement that the trust relationship have existed prior to the act which created the debt in order to fall within the statutory [fiduciary capacity] exception." Id. (citing Matter of Angelle, 610 F.2d 1335 (5th Cir. 1980)). Accordingly, "constructive" or "resulting" trusts, which generally serve as a remedy for some dereliction of duty in a confidential relationship, do not fall within the § 523(a)(4) exception "because the act which created the debt simultaneously created the trust relationship." Id. (emphasis added).[4]

---

[4]In a similar vein, in evaluating the predecessor to § 523(a)(4), the Supreme Court in Davis stated: "It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto." Davis, 293 U.S. at 333, 55 S. Ct. at 154. That is, the language of the defalcation exception "would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created." Id. (quotation marks and citation omitted).

The Davis court was interpreting Bankruptcy Act § 17(a)(4), formerly codified at 11 U.S.C. § 35(a)(4) (repealed 1978), a predecessor to § 523(a)(4). That section stated in pertinent part: "A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as . . . were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." Bankruptcy Act of 1898, § 17(a)(4), 52 Stat. 840, 851, formerly codified at 11 U.S.C. § 35(a)(4) (repealed 1978).

Even if a fiduciary relationship exists prior to the act that created the debt, the next question under § 523(a)(4) is whether there was a "defalcation" while acting in a fiduciary capacity. In Quaif, this Court further explained that "'[d]efalcation' refers to a failure to produce funds entrusted to a fiduciary," but that "the precise meaning of 'defalcation' for purposes of § 523(a)(4) has never been entirely clear." Id. at 955. Quaif observed that the best analysis of "defalcation" is that of Judge Learned Hand in Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510 (2d Cir. 1937), in which "Judge Hand concluded that while a purely innocent mistake by the fiduciary may be dischargeable, a 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'" Quaif, 4 F.3d at 955 (citing Central Hanover, 93 F.2d at 512). Indeed, "[s]ome cases have read the term even more broadly, stating that even a purely innocent party can be deemed to have committed a defalcation for purposes of § 523(a)(4)." Id.

Additionally, Quaif observed that statutorily created trusts "fit into neither of the traditional categories" of express trust or resulting or constructive trust and that courts had struggled with reconciling this new type of trust. Id. at 953-54. In Quaif, this Court addressed a Georgia statute, O.C.G.A. § 33-23-79, which required that premiums received by an insurance agent "shall be accounted for in

9

his fiduciary capacity, shall not be commingled with his personal funds, and shall be promptly accounted for and paid to the insurer, insured, or agent as entitled to such funds." (Emphasis added.) The Quaif court concluded that O.C.G.A. § 33-23-79, which expressly stated that premiums were held by an agent in his fiduciary capacity, created fiduciary duties on the part of the agent for purposes of § 523(a)(4). Quaif, 4 F.3d at 953-54.

We now apply these general § 523(a)(4) principles to this case.

**B.    Guerras' Adversary Complaint**

The Guerras do not contend that a physician-patient relationship creates fiduciary duties or that malpractice debts are generally non-dischargeable. Rather, they contend that the Debtor owed his patients a fiduciary duty, created by the Florida Financial Responsibility Act, Florida Statutes § 458.320, to maintain funds to satisfy malpractice debts. The Guerras argue that the Debtor breached that fiduciary duty by failing to maintain those funds and that the Guerras have a non-dischargeable claim against the Debtor for the amount of the required fund to pay their malpractice award. Thus, we examine whether § 458.320 creates a fiduciary duty or technical trust between the Debtor and the Guerras or even any debt between them.

"As a condition of licensing and maintaining an active [medical] license," §

10

458.320 requires that a physician "must by one of the following methods demonstrate to the satisfaction of the board and the department financial responsibility to pay claims and costs ancillary thereto arising out of the rendering of, or failure to render, medical care or services":

> (a) Establishing and maintaining an escrow account consisting of cash and assets eligible for deposit . . . in the per claim amounts specified in paragraph (b). . . .
>
> (b) Obtaining and maintaining professional liability coverage in an amount not less than $100,000 per claim, with a minimum annual aggregate of not less than $300,000 . . . . [or]
>
> (c) Obtaining and maintaining an unexpired, irrevocable letter of credit, established pursuant to chapter 675, in an amount not less than $100,000 per claim, with a minimum aggregate availability of credit of not less than $300,000.  The letter of credit must be payable to the physician as beneficiary upon presentment of a final judgment indicating liability and awarding damages to be paid by the physician or upon presentment of a settlement agreement . . . .

Fla. Stat. § 458.320(1).  Thus, to obtain a medical license, § 458.320(1) requires that a physician maintain either an escrow account, professional liability coverage, or a letter of credit in an amount of $100,000 per claim with a minimum aggregate of $300,000.  Id.  As to physicians who have hospital staff privileges, such as the Debtor here, § 458.320(2) increases those amounts to $250,000 per claim or $750,000 in the aggregate.  Fla. Stat. § 458.320(2).

On appeal, there is no dispute that the Debtor was required by Florida law to maintain an escrow fund, or malpractice coverage, or a letter of credit; nor is there

11

any dispute that he failed to do so.  However, for several reasons, we conclude that § 458.320 does not create a fiduciary duty or technical trust or even a debt between the Debtor and the Guerras for purposes of § 523(a)(4) of the Bankruptcy Code.

First,§ 458.320 is a regulatory statute requiring that the Debtor demonstrate financial responsibility to the State to maintain his license and hospital staff privileges.  It even offers physicians three options, including maintaining an escrow fund, to demonstrate financial responsibility.  The statute does not create a relationship, much less a contractual or fiduciary duty or a technical trust between a physician and a patient.

Second, even to the extent a physician opts to create such a claims fund to satisfy the statute, the statute does not use the term "fiduciary capacity," nor does it require a doctor to place funds "in trust" for the benefit of third party patients.  The statute does not require the physician to hold and account for the funds to third party patients.  The statute does not create any property right in a doctor's escrow fund in favor of a patient.  Rather, the stated purpose of § 458.320 is to require physicians to "demonstrate to the satisfaction of the board and the department financial responsibility to pay claims and costs" arising out of medical care.  Put simply, § 458.320 requires that a physician demonstrate financial responsibility to the appropriate state licensing authorities through certain means, but it does not

12

create in malpractice victims an entitlement to those means.  See Hanft v. Church (In re Hanft), 315 B.R. 617, 624 (S.D. Fla. 2002) ("Plainly, the ultimate purpose of [§ 458.320] is to ensure that patients will be reimbursed for successful malpractice claims, but that does not mean that the patients are 'identifiable beneficiaries' as required for creation of a technical trust.").[5]

Third, "[t]he definition of 'defalcation' as 'a failure to produce funds entrusted to a fiduciary,' Quaif, 4 F.3d at 955, further compels the conclusion that Fla. Stat. § 458.320 does not create a fiduciary duty, because no funds are 'entrusted' to a doctor under the statute."  Hanft, 315 B.R. at 624.  No funds were entrusted to the Debtor, and thus no fiduciary duty could be created with regard to entrusted funds.[6]

The Guerras rely heavily on this Court's decision in Quaif for the

---

[5]We note that the statute does not require that any malpractice award actually be satisfied by the escrow account used to satisfy the statute; a physician could choose to satisfy any malpractice judgment through other funds.  A prevailing malpractice plaintiff does not have a claim or entitlement to the escrow account established under § 458.320, but rather would be a general creditor of the defendant physician, and the physician could pay the judgment with whatever funds he desires.

[6]To the extent the Guerras argue that the act that created the debt was the malpractice judgment and that the debt is rendered non-dischargeable by the Debtor's failure to satisfy § 458.320, that argument lacks merit.  Malpractice verdicts are dischargeable, and the Guerras do not argue otherwise.  The failure to maintain a claims fund does not alter the nature of the dischargeable judgment debt.  Further, the § 523(a)(4) exception to dischargeability addresses debts "for fraud or defalcation," not for malpractice.  The Guerras could have a non-dischargeable debt only if that debt was for defalcation of funds held in a fiduciary capacity.  As explained above, § 458.320 does not create a fiduciary duty or even a debt for purposes of § 523(a)(4) of the Bankruptcy Code.

13

proposition that statutes such as § 458.320 create fiduciary duties. However, the Guerras' argument is misplaced. As noted earlier, the Georgia statute at issue in Quaif explicitly stated that funds received by agents were to hold and account for premiums in a fiduciary capacity. Here, as explained above, nothing in § 458.320 suggests that any funds required to be maintained would be held in a fiduciary capacity. Nothing in § 458.320 requires the physician to perform any accounting to patients of any funds held to satisfy the § 458.320 regulatory requirements.

Accordingly, the district court and bankruptcy court did not err in concluding that the Guerras' claim against the Debtor based on his failure to comply with § 458.320 falls outside the defalcation exception to discharge set forth in § 523(a)(4).[7]

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's order affirming the bankruptcy court's dismissal of the Guerras' adversary complaint.

**AFFIRMED.**

---

[7]In the district court, the Debtor argued that § 458.320 is a regulatory statute and creates no private right of action in the Guerras and that their adversary complaint fails to state a cause of action. The Debtor did not make this argument in the bankruptcy court and the district court did not address this issue but based its ruling on whether § 458.320 involved a fiduciary duty for purposes of § 523(a)(4). We need not and do not address whether any private right of action could exist under § 458.320 under any circumstances.

14