Raymond B. Ray, Judge
THIS MATTER came before the Court for a hearing on October 31, 2018, upon Defendant Michael Brandt's Motion to Dismiss (the "Motion") [D.E. 7], Plaintiff Great American Insurance Company's ("Great American") Response [D.E. 16], and Defendant's Reply [D.E. 18] thereto. The Court - having reviewed and considered the Motion, Response, Reply, court file, arguments of the parties and being otherwise duly advised in the premises - denies Defendant's Motion.
Factual Allegations
Plaintiff initiated the above styled adversary proceeding on August 27, 2018 upon the filing of their Complaint. [D.E. 1][1] . Plaintiff's Complaint objects to the dischargeability of a debt under 11 U.S.C. § 523(a)(4). Great American is a surety and construction bond company. [D.E. 1, ¶ 11]. Structural Integrity Contractors, Inc. ("Structural") is a Florida corporation owned by the Defendant. [D.E. 1, ¶ 12]. To secure construction and surety bonds[2] on behalf of Structural, Defendant entered into an indemnity agreement with Great American. [D.E. 1, ¶¶ 9, 16]. The indemnity agreement contained a trust provision. This provision states:
"Undersigned covenant and agree that all funds received by them, or due or to *831 become due under any contract covered by any Bond are trust funds whether in the possession of the Undersigned or another, for the benefit of all parties to whom Undersigned incurs obligations in the performance of the contract covered by the Bond..."
[D.E. 1, Ex. A pg. 2].
As of the petition date, Great American had received claims on two bonds covered by the indemnity agreement. These bonds are the PK-14-053 Van Buren Parking Garage - Structural Defects Survey and Repairs ("Parking Garage Bond") and the Cricket Club Condominium Concrete Restoration and Waterproofing bond ("Cricket Club Bond"). [D.E. 1, ¶ 18-19]. As of the filing of the Complaint, Great American has incurred losses of $401,140.00 from claims against the Parking Garage Bond and Cricket Club Bond[3] . [D.E. 1, ¶ 28]. Great American also loaned Structural $26,650.65 to assist Structural in making payroll relating to projects covered by Great American's bonds.
Structural received funds for work performed on projects covered by both the Parking Garage Bond and Cricket Club Bond. [D.E. 1, ¶ 37]. These funds were used, among other things, to pay for the personal expenses of the Defendant. [D.E. 1, ¶ 38].
Conclusions of Law
A. Standard of Review
Federal Rule of Civil Procedure 8(a)[4] simply requires a plaintiff to plead "... a short and plain statement of the claim showing that the pleader is entitled to relief..." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint under Rule 12(b)(6) for failure to state a claim. Fed. R. Civ. P. 12(b)(6)[5] . To survive a motion to dismiss, a complaint must "state a plausible claim for relief." Ashcroft v. Iqbal , 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In the Eleventh Circuit, "a complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." Gates v. Khokar , 884 F.3d 1290, 1296 (11th Cir. 2018). In making this determination, the Court will "accept the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." Id. (internal citations omitted). The Court's review of the pleadings is "limited to the four corners of the complaint and any documents referred to in the complaint which are central to the claim." Nationwide Advantage Mortg. Co. v. Federal Gaur. Mortg. Co. , 2010 WL 2652496 *2 (S.D. Fla. 2010).
B. Exception to Discharge Under 11 U.S.C. § 523(a)(4)
11 U.S.C. § 523(a)(4) exempts from discharge a debt which was incurred via "... fraud or defalcation while acting in a fiduciary capacity..." 11 U.S.C. § 523(a)(4). The existence of a fiduciary capacity under § 523(a)(4) is defined under federal law. McDowell v. Stein , 415 B.R. 584, 594 (S.D. Fla. 2009). The term is defined narrowly and only applies where there is an express or technical trust in existence prior to the act of defalcation. Hanft v. Church (In re Hanft ), 315 B.R. 617, 623 (S.D. Fla. 2002) (citing Quaif v. Johnson , 4 F.3d 950, 953 (11th Cir. 1993) ).
*832 However, state law is relevant to this determination and a party will be considered to be acting in a fiduciary capacity "...if state law imposes the duties of a trustee on a party..." McDowell , 415 B.R. at 595.
a. Existence of a Fiduciary Duty
The crux of Defendant's argument is that a technical trust requires the segregation of trust assets. In support of this, Defendant relies heavily on the holdings of Quaif v. Johnson and Cooseman's Miami, Inc. v. Arthur (In re Arthur) , 589 B.R. 761 (Bankr. S.D. Fla. 2018). However, Defendant misinterprets the holdings of Quaif and Cooseman's .
Quaif v. Johnson involved a trust that arose pursuant to statute. Quaif v. Johnson , 4 F.3d 950, 953 (11th Cir. 1993). In analyzing whether the statutory trust fell within the exception to discharge contained in § 523(a)(4), the Eleventh Circuit specifically noted the difficulty associated with classifying the statutory trust which "...create fiduciary duties that are dependent upon the relationship between the parties but fit into neither of the traditional categories." Id. The Eleventh Circuit observed that the new, statutory trusts, fell somewhere between express trusts, which traditionally fell under the purview of § 523(a)(4), and a trust created by operation of law. Id. at 593-594. To determine if the trust created by the Georgia statute in issue was more akin to an express trust, and thus covered by § 523(a)(4) or a constructive or residual trust, the Eleventh Circuit looked to whether trust assets had been segregated prior to any defalcation. Id. at 954. Rather than standing for the proposition that segregation is required for any trust to fall within § 523(a)(4)'s exception to discharge Quaif stands for the proposition that segregation is needed before a statutory trust will fall within § 523(a)(4)'s exception to discharge[6] . This interpretation is supported by the Eleventh Circuit's decision in Guerra v. Fernandez-Rocha , where the Eleventh Circuit further discussed § 523(a)(4)'s exception to discharge. In applying the holding of Quaif , the Eleventh Circuit stated "Quaif also discussed the trends in judicial interpretation of the § 523(a)(4) exception and noted that courts seemed to include the voluntary, express trust created by contract within the scope of "fiduciary capacity" as used in § 523(a)(4)." Guerra v. Fernandez-Rocha (In re Fernandez-Rocha) , 451 F.3d 813, 816 (11th Cir. 2006).
Cooseman's Miami Inc. v. Arthur (In re Arthur) , lends itself to a similar analysis. Cooseman 's also examined whether a statutory trust created fiduciary duties prior to defalcation. The Cooseman 's Court noted that "a technical trust is more akin to a trust created by voluntary agreement., i.e. an express trust." Cooseman's , 589 B.R. at 766. Just as in Quaif , the Court in Cooseman 's noted that "statutory trusts fall in the middle" and endeavored "[t]o determine whether a statutory trust is more analogous to an express trust than it is to a resulting or constructive trust..." Id. Thus, just as in Quaif , the holding of Cooseman 's is limited to statutory trusts.
The same can be said for the other cases cited by Defendant in his Reply. For example, Defendant cites to this Court's decision in Ershowsky v. Freedman (In re Freedman) , 431 B.R. 245 (Bankr. S.D. Fla. 2010) for the same proposition, that segregation is required to establish a fiduciary capacity. [D.E. 18, ¶ 5]. However, Ershowsky stands for the very conclusion reached *833 by the Court in the present case, holding that § 523(a)(4)'s exception to discharge "require[s] the existence of an[ ] express or technical trust, and included statutorily created trusts if they were somehow segregated from other amounts." Ershowsky , 431 B.R. at 262. The Court's present conclusion, that a segregation requirement is limited to statutory trusts is entirely consistent with the holding of Ershowsky . Id.
The Court believes the allegations are more like the facts of Developers Sur. & Indem. Co. v. Bi-Tech Constr., Inc. , 979 F.Supp.2d 1307 (S.D. Fla. 2013). Developers involved an indemnity agreement that contained a trust provision[7] substantially similar to the provision contained in the indemnity agreement executed between Plaintiff and Defendant. Developers , 979 F.Supp.2d at 1312. In holding that the indemnity agreement created an enforceable trust, the court held "in order for the language of the General Indemnity Agreement to create a fiduciary relationship, i.e., in this case a trust, the language must create a trust, establish a trust corpus and show an intent by the parties to create a fiduciary relationship." Id. at 1318 (internal citations and quotations omitted). The Court then specifically analyzed whether the actions of the defendant constituted a defalcation by analyzing defalcation in the context of 11 U.S.C. § 523(a)(4). Id. at 1318-1319.
Just as in Developer's , the indemnity agreement executed between the Plaintiff and Defendant contained a trust provision. The trust provision contained in the indemnity agreement is sufficient to establish an express trust. The provision provided for a trust corpus and an intent by the parties to create a fiduciary relationship. Therefore, there existed a fiduciary relationship between Plaintiff and Defendant, regardless of segregation. See : Developers , 979 F.Supp.2d at 1318 (holding that a trust provision contained in an indemnity agreement was sufficient to establish a fiduciary relationship.) Unlike the statutory trusts in Cooseman 's and Quaif , the relationship between the Plaintiff and Defendant fits within those relationships traditionally covered by § 523(a)(4)'s exception to discharge. See : Quaif , 4 F.3d at 954-954 ("In the early judicial interpretation of the predecessors to § 523(a)(4), the courts seemed to include the voluntary 'express' trust within the scope of fiduciary capacity.") and : Guerra , 451 F.3d at 816 ("Quaif also discussed the trends in judicial interpretation of the § 523(a)(4) exception and noted that courts seemed to include the voluntary, express trust created by contract within the scope of "fiduciary capacity" as used in § 523(a)(4).")
Therefore, because the trust provision contained in the indemnity agreement executed between Plaintiff and Defendant was sufficient to establish a trust, a fiduciary relationship existed between Plaintiff and Defendant.
b. Defalcation
The Supreme Court has defined defalcation in § 523(a)(4) to require an intentional wrong "...where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct..." Bullock v. BankChampaign, N.A. , 569 U.S. 267, 273, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013). Intentional conduct includes *834 "...conduct that the fiduciary knows is improper, but also reckless conduct of the kind that the criminal law often treats as the equivalent." Id. at 274, 133 S.Ct. 1754. Such conduct must occur after the fiduciary relationship is established. Quaif , 4 F.3d at 954.
Here, Plaintiff has alleged sufficient facts to allege that an act of defalcation occurred after a fiduciary relationship had been established. Further, a factual issue exists as to whether the Defendant's conduct was intentional.
Conclusion
The Court finds that the Plaintiff has alleged sufficient facts to establish a prima facie claim under 11 U.S.C. § 523(a)(4). Therefore, it is:
ORDERED that:
1. The Motion [D.E. 7] is DENIED without prejudice .
2. Defendant shall file an answer within fourteen (14) days after entry of this Order.
ORDERED.

Docket entries refer to docket entries in the adversary proceeding 18-01351-RBR unless otherwise indicated.

Great American issued bonds on five (5) separate projects on behalf of Structural [D.E. 1, ¶ 16-17].

Great American alleges that these losses are continuing in nature. [D.E. 1, ¶ 28].

Made applicable through Federal Rule of Bankruptcy Procedure 7008. Fed. R. Bankr. P. 7008

Made applicable through Federal Rule of Bankruptcy Procedure 7012. Fed. R. Bankr. P. 7012

Segregation of trust assets is a hallmark of when the fiduciary relationship arose, not the existence of one.

The indemnitors in Developers agreed to:
"... hold all money and all other proceeds of the Obligation, however received, in trust for the benefit of Surety and to use such money and other proceeds for the purposes of performing the Obligation and for discharging the obligations under the Bond, and for no other purpose until the liability of the Surety under the Bond is completely exonerated." Developers , 979 F.Supp.2d at 1312