**Warren C. McDOWELL, Appellant,**

v.

**Judith STEIN and David Neufeld, Appellees.**

No. 08–80998–CIV.

United States District Court, S.D. Florida.

Jan. 20, 2009.

*ORDER AFFIRMING BANKRUPTCY COURT ORDER; DENYING MOTION TO STRIKE [DE 14]; CLOSING AND REMANDING CASE*

ALAN S. GOLD, District Judge.

THIS CAUSE is before the Court on Appellant Warren C. McDowell's Notice of Appeal from the Bankruptcy Court's Order Granting Motion for Summary Judgment in Bankruptcy Adversary Case No. 07–11728–BKC–PGH [DE 1] ("Order on Appeal"), filed September 10, 2008. Appellant filed an Initial Brief [DE 8] on October 17, 2008. Appellees filed an Answer Brief [DE 13] on November 18, 2008, and Appellant filed a Reply Brief [DE 19] on December 5, 2008. Appellant also filed a Motion to Strike [DE 14] on November 20, 2008, and Appellees filed Opposition to the Motion to Strike [DE 21] on December 5, 2008. Oral argument on the Appeal and the Motion to Strike was held on December 18, 2008, and per my request, the parties submitted Status Reports on the New York State Court proceedings [DE 25 and 26] on January 5, 2009. Having reviewed the Appeal and Motion to Strike, related pleadings, pertinent parts of the record on appeal, and the arguments presented at oral argument, I affirm the Bankruptcy Court's Order on Appeal, remand the case to the Bankruptcy Court, and deny Appellant's Motion to Strike as moot.

I. *Background and Order on Appeal*

The Order on Appeal resulted in the granting of summary judgment in favor of Appellees on all counts in Bankruptcy Ad-

versary Case No. 07–11728–BKC–PGH. Specifically, the Bankruptcy Judge concluded that Appellant was collaterally estopped from contesting the findings and conclusions of a prior New York Court decision, and that, based on the findings of the New York Court, certain debt of Appellant that was the result of the New York Court decision was not dischargeable under 11 U.S.C. § 523(a)(2), (4), and (6). For background, I discuss below the history of the parties' corporate relationship, the New York Court proceeding and decision, and the Bankruptcy Court proceeding and decision. I take all facts from the Order on Appeal, in which the Bankruptcy Court relied on the factual findings in the New York Memorandum Decision and Judgment.[1]

## A. *The Parties' Relationship and the New York Memorandum Decision*

In early 1992, Kenneth F. Stein and Appellant Warren McDowell formed, as equal co-owners, Lone Hill Properties Inc. ("Lone Hill"), a New York corporation. (Order on Appeal, DE 1, p. 2). Mr. Stein did not transfer or otherwise assign his shares in Lone Hill. (*Id.* at p. 3). Mr. Stein passed away in February 2000, and Appellant asserted that he was the sole owner of Lone Hill. (*Id.*). Appellees Judith Stein and David Neufeld, as co-executors of Mr. Stein's estate, disputed Appellant's assertion that he was the sole owner, and commenced in 2001 a proceeding in the Supreme Court of the State of New York, Suffolk County ("New York Court") to determine who owned shares of Lone Hill. (*Id.*). Among other things, Appellees asserted claims for fraud and breach of fiduciary obligation and sought compensa-

tory damages, punitive damages, an accounting, a permanent injunction, and imposition of a constructive trust. (*Id.* at pp. 3–4).

After a nine-day bench trial, during which Appellees called ten witnesses, and Appellant called one witness, the New York Court entered a Memorandum Decision on January 4, 2007, in which it explicitly gave credence to Appellee's witnesses and evidence and found that Appellant had never been the sole owner of Lone Hill; that the contributions Mr. Stein made to Lone Hill were far in excess of the contributions made by Appellant; that Appellant had breached his fiduciary duty to Mr. Stein by concealing his own lack of contributions towards Lone Hill in an attempt to usurp Mr. Stein's ownership interest; and that Appellant committed fraud by falsely claiming full ownership of Lone Hill and excluding Appellees from the business, resulting in the loss of operational control and profits. (*Id.* at p. 4; New York Memorandum Decision, pp. 3–8). Specifically, the New York Court found that, sometime in 2001, to bolster Appellant's contention that he was the sole owner of Lone Hill, Appellant substituted false loan documents in the bank files of Suffolk County National Bank's Loan Department, which had negotiated a Business Reserve Facility for Lone Hill. (Order on Appeal, p. 3).

The New York Court entered a corresponding Judgment on February 23, 2007. (*Id.* at p. 2). The Judgment stated that it was a final judgment as to the fraud and breach of fiduciary duty causes of action, and an interlocutory judgment as to the other causes of action. (New York Judgment, p. 9). The New York Judgment awarded to Appellees $585,033.30, including interest, for counsel fees and disburse-

---

1. Appellees submitted for my review the transcript of the trial in the New York Court. Because the Bankruptcy Court relied only on the Memorandum Decision and Judgment and did not look to the trial transcript, I limit my analysis on appeal to the Memorandum Decision and Judgment.

ments, and as sanctions against the Appellant ("Sanction Award"). (*Id.* at p. 8). The New York Judgment also awarded punitive damages to Appellees, but specified that compensatory and punitive damages for the fraud and breach of fiduciary duty causes of action would be determined by a Referee appointed to hear and report any disputed amount between the parties.[2] (*Id.* at pp. 8–9). To date, the Referee has conducted three evidentiary hearings and one conference, and is expected to conduct a final hearing before issuing its report. (Appellant's Status Report, DE 25, pp. 2–3; Appellees' Status Update, DE 26, p. 2).

Both the New York Memorandum Decision and Judgment are currently on appeal in the New York State Courts. Appellant filed a Notice of Appeal of the Memorandum Decision on February 13, 2007, and Appellant and Lone Hill Properties, Inc. filed Notices of Appeal of the New York Judgment on March 16 and 26, 2007, respectively (together, "New York Appeals"). (Appellant's Status Report, p. 2). The New York Appeals are currently stayed pending resolution of the bankruptcy proceeding. (*Id.*).

### B. *The Bankruptcy Proceedings*

On March 14, 2007, less than one month after the New York Judgment was entered, Appellant filed for relief under Chapter 11 of the Bankruptcy Code, thereby automatically staying the New York State Court proceedings. (Order on Appeal, p. 5). On April 30, 2007, Bankruptcy Judge Steven H. Friedman granted Appellees a relief from the stay to obtain an accounting as specified in the New York Judgment, and to calculate and determine remaining damages to be assessed against Appellant. (*Id.*).

A few months later, on July 18, 2007, Appellees filed an adversary proceeding objecting to the dischargeability of the debts owed to Appellees under the New York Judgment, pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6). (*Id.* at p. 6). Appellees sought Summary Judgment on the dischargeability of debts pursuant to 11 U.S.C. §§ 523(a)(2), (4), and (6).[3] (*Id.*). In the Order Granting Plaintiffs' Motion for Summary Judgment ("Order on Appeal"), Bankruptcy Judge Paul G. Hyman granted Summary Judgment to Appellees, and concluded that Appellant was collaterally estopped from contesting the dischargeability of debt owed under the New York Judgment for damages for fraud, breach of fiduciary duty, and punitive damages. (*Id.* at pp. 19–20). Appellant ap-

---

**2.** Even though the New York Judgment did not determine the damages amount for breach of fiduciary duty and fraud, but instead appointed a referee to hear and report on any disputed amount between the parties, the New York Court declared these portions of the judgment final, and therefore suitable for collateral estoppel. *See also Contra Metromedia Co. v. Fugazy*, 983 F.2d 350, 366 (2nd Cir.1992) ("The mere fact that the damages awarded to the plaintiff have not been yet calculated, though normally precluding an immediate appeal, does not prevent use of final ruling on liability as collateral estoppel."); *In re Jones*, 311 B.R. 647, 649 (Bkrtcy. M.D.Ga.2004) ("An order that establishes liability but leaves open the question of damages ordinarily is not a final order for purposes of preclusion.... In the pending motion for

summary judgment, neither the Plaintiff nor Defendant argues that this Court should delay ruling on the issue presented until the district court determines the amount of cleanup costs and civil penalties. The Court is persuaded that the issue presented is legal in nature as opposed to being a factual dispute. The Court is persuaded that the issue presented is appropriate for summary judgment because the Court will rule only on the issue of whether the civil penalties are dischargeable under the Bankruptcy Code.").

**3.** Appellees initially also objected to and sought Summary Judgment on the Debtor's discharge under 11 U.S.C. § 727, but withdrew without prejudice that Motion.

pealed Bankruptcy Judge Hyman's Order, arguing Bankruptcy Judge Hyman erred in concluding that the Memorandum Decision was entitled to collateral estoppel effect with respect to the findings of fraud, breach of fiduciary duty, defalcation, or willful and malicious injury, and therefore the Memorandum Decision did not support a finding of non-dischargeability under 11 U.S.C. §§ 523(a)(2), (4), and (6).

## II. Standard of Review

■ District courts sit as appellate courts over bankruptcy decisions. *Miner v. Bay Bank & Trust Co. (In re Miner)*, 185 B.R. 362, 365 (N.D.Fla.1995), aff'd, 83 F.3d 436 (11th Cir.1996). A district court reviews a bankruptcy court's legal conclusions de novo, *In re Englander*, 95 F.3d 1028, 1030 (11th Cir.1996), and a bankruptcy court's factual findings for clear error, Fed. R. Bankr.P. 8013; *In re Gamble*, 168 F.3d 442, 444 (11th Cir.1999).

■ When district courts review the factual findings of a bankruptcy court, the burden of showing that the bankruptcy court's findings are clearly erroneous is upon the appellant. *Acquisition Corp. of Am. v. Fed. Sav. & Loan Ins. Corp.*, 96 B.R. 380, 382 (S.D.Fla.1988). A finding of fact is not clearly erroneous unless "this court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been committed." *IBT Int'l, Inc. v. N. (In re Int'l Admin. Serv., Inc.)*, 408 F.3d 689, 698 (11th Cir.2005) (internal citations omitted).

## III. Discussion

### A. Collateral Estoppel

■ The full faith and credit statute requires that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are

taken." *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985) (citing 28 U.S.C. § 1738). Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. *Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675 (11th Cir.1993); *see Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. *In re St. Laurent*, 991 F.2d at 675–76.

■ Collateral estoppel principles apply to dischargeability proceedings, but "[w]hile collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." *Id.* at 675–76. Where the judgment or decision on its face presents no ambiguity or issue of fact, the bankruptcy court may accept those facts as true and make a legal conclusion as to dischargeability. *See In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987) ("The bankruptcy court was correct in determining that no issue of fact existed as to the recitations in the state court judgments. It therefore properly accepted these recitations as true, and correctly found that they required the legal conclusion that the debt owed ... was non-dischargeable in bankruptcy.") (quoting *Carey Lumber Co. v. Bell*, 615 F.2d 370, 377 (5th Cir.1980)). Moreover, while the bankruptcy court may look to the entire record in considering

dischargeability of a judgment, *see In re Latch*, 820 F.2d 1163, 1166 (11th Cir.1987), the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) makes clear that there is no per se rule that a bankruptcy court review the entire record in applying issue preclusion. In *Grogan*, the successful plaintiffs introduced only "portions of the record" from the prior state case into evidence before the bankruptcy court, and these portions did not include the trial transcript. *Id.* at 282, 111 S.Ct. 654; *see also Samhammer v. Home Mut. Ins. Co. of Binghamton*, 120 A.D.2d 59, 63, 507 N.Y.S.2d 499 (N.Y.A.D. 3 Dept.1986) (concluding, without reviewing transcript from administrative agency hearing because such transcript was not in record before the court, that agency decision had collateral estoppel effect).[4]

■■■■ As for the applicable collateral estoppel standard, under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). The parties do not dispute the second prong-that Appellant had a full and fair opportunity to litigate the issues in the New York State Court Proceedings. As to the first prong, "under New York law, collateral estoppel effect will only be given to matters actually litigated and determined in a prior action, because if an issue has not been litigated, there is no identity of issues." *Id.* at 282 (citations and internal quotation marks omitted). "For a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Id.* (citations and internal quotation marks omitted). "The prior decision need not have been explicit on the point, since if by necessary implication it is contained in that which has been explicitly decided, it will be the basis for collateral estoppel." *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d. Cir.1997) (citation and internal quotation marks omitted).

■■■■ Finally, under New York law, the "pendency of an appeal does not prevent the use of the challenged judgment as the basis of collateral estoppel." *Anonymous v. Dobbs Ferry Union Free School Dist.*, 19 A.D.3d 522, 522, 797 N.Y.S.2d 120 (2nd Dept.2005) (citation omitted). If the appeal results in the overturning of the challenged judgment, Federal Rule of Civil Procedure 60(b)(5), as applied by Bankruptcy Rule 9024, permits a court to relieve a party from a final judgment where "it is based on an earlier judgment that has been reversed or vacated." Fed. R.Civ.P. 60(b)(5); Bankruptcy Rule 9024. Applying these principles of collateral estoppel and New York law, I turn to the Bankruptcy Court's granting of summary judgment of non-dischargeability under Sections 523(a)(2), (4), and (6).

### B. *Section 523(a)(2)*

■■■■ Appellant first contends that the Bankruptcy Court erred in granting summary judgment that the debt owed to Appellees is non-dischargeable under 11 U.S.C. § 523(a)(2), which excepts from discharge any debt "for money, property, ser-

---

4. In this case, especially, the Bankruptcy Court did not need to review the trial transcript from the New York proceeding. At trial, Appellees called ten witnesses, and Appellee called only one witness. The testimony of all witnesses was summarized by the New York Court in the Memorandum Decision.

vices, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...." 11 U.S.C. § 523(a)(2)(A). The elements of a claim under § 523(a)(2)(A) are: (1) the debtor made a false representation with the intention of deceiving the creditor; (2) the creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation. *E. Ted Taylor v. Edward Kirksey Wood, Jr. (In re Wood)*, 245 Fed.Appx. 916, 917–18 (11th Cir.2007) (citing *Securities and Exchange Commission v. Paul A. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281–82 (11th Cir. 1998)). Similarly, fraud under New York law requires a showing that "(1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss." *Ross v. Louise Wise Services, Inc.*, 8 N.Y.3d 478, 836 N.Y.S.2d 509, 868 N.E.2d 189, 195 (2007). Thus the standard for fraud under New York law is almost identical to the standard under § 523(a)(2)(A). *See In re Wood*, 245 Fed.Appx. at 916 ("We have noted that § 523(a)(2)(A) has generally been interpreted to require the traditional elements of common law fraud."); *Evans v. Ottimo*, 469 F.3d 278, 283 (2d. Cir.2006) (applying the same standard for fraud under § 523(a)(2)(A) as the Eleventh Circuit, assessing "whether the elements of fraud under New York law are identical to the elements of fraud under the Bankruptcy Code § 523(a)," concluding that fraud under New York law involves "elements congruent with fraud under bankruptcy law,"

and holding that "state court's entry of a default judgment, grounded in a finding of actual fraud and imposing punitive damages ... resolved all issues necessary to establish non-dischargeability under § 523(a)(2)" and was "decisive of the present action."). Accordingly, the Bankruptcy Court held that the damages imposed by the New York Court for fraud are non-dischargeable.

■■■ Appellant argues that the Bankruptcy Court erred in concluding that Appellant's liability would be non-dischargeable under § 523(a)(2) because the only fraud-related factual finding in the Memorandum Decision was that Appellant was left alone with the bank file and certain original documents in the bank file disappeared. Appellant contends that this event occurred after the commencement of the New York State Court Proceeding and therefore cannot constitute a false representation made by Appellant to Appellees, that Appellant intended for Appellees to rely on, and Appellees did indeed rely on to cause the debt or liability.

First, as noted by the Bankruptcy Court, the New York Court found Appellant liable for fraud under New York law because Appellant "falsely claimed 100% ownership of Lone Hill Properties, Inc," "must have been aware of the fallacy of this position," and excluded Plaintiffs from the business, "resulting in loss of operational control and profits." (Memorandum Decision, p. 22). Also, liability for fraud under New York law, like non-dischargeability under § 523(a)(2), requires a finding of a false representation as to a material fact. If Appellant disagrees with the New York Court's factual conclusion that Appellant falsely claimed 100% ownership of Lone Hill Properties, Inc., or if Appellant believes that the New York Court erred in finding a material misrepresentation that induced reliance based on the

substitution of loan documents, that is an issue for appeal in the New York courts. Under the principles of collateral estoppel, the Bankruptcy Court need only take this previously litigated factual issue and determine if it warrants a finding of non-dischargeability under the Bankruptcy Code. *See Evans,* 469 F.3d at 283 (concluding that relitigation of non-dischargeability under § 523(a)(2) was precluded by state court's entry of default judgment because such judgment was grounded in finding of actual fraud). Because the elements of fraud under New York law are identical to those that support non-dischargeability under § 523(a)(2), I agree with the Bankruptcy Court that the New York Court Decision collaterally estops Appellant from re-litigating the issue of fraud, and, to the extent the New York Court assesses damages against Appellant for fraud, such debt is non-dischargeable under § 523(a)(2).[5]

## C. *Section 523(a)(4)*

 Appellant next argues that the Bankruptcy Court erred in granting summary judgment that the debt owed to Appellees is non-dischargeable under 11 U.S.C. § 523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). This section is divided into two disjunctive sections—the first deals with fraud or defalcation while acting in a fiduciary capacity, and the second deals with embezzlement or larceny even when not acting in a fiduciary capacity. *See, e.g. In re Hosey,* 355 B.R. 311, 321 (Bkrtcy. N.D.Ala.2006). The Bankruptcy Court, giving effect to the findings of the New York Court, concluded that Appellant had a fiduciary duty to Appellees under § 523(a)(4), and Appellant committed de-

falcation by self-dealing and withholding income entrusted to him as a fiduciary, and excluding the rightful co-owners from the business. The Bankruptcy Court did not base its grant of summary judgment on a finding of embezzlement or larceny. Accordingly, it is the fiduciary duty and fraud or defalcation portion of § 523(a)(4) that is at issue here. For a debt to be dischargeable under this portion of § 523(a)(4), two elements must be met: first that Appellant had a fiduciary duty to Appellees, and second that Appellant committed fraud or defalcation while acting in his capacity as a fiduciary. 11 U.S.C. § 523(a)(4).

### 1. *Fiduciary Duty*

 The existence of fiduciary capacity under § 523(a)(4) is determined by federal law, but state law is relevant to the inquiry. Federal law narrowly defines the concept of a "fiduciary relationship" under § 523(a)(4) to include only relationships involving an express or technical trust. *Quaif v. Johnson,* 4 F.3d 950, 953 (11th Cir.1993); *In re Regan,* 477 F.3d 1209, 1211 (10th Cir.2007) ("Under applicable federal principles, 'an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4).' ") (citation omitted). In contrast, implied, resulting, and constructive trusts do not fall within § 523(a)(4). *Quaif,* 4 F.3d at 953. The "technical or express trust requirement" is not limited to formal contractual trust agreements, but can include relationships in which trust type obligations are imposed pursuant to statute, or potentially by common law. *In re Talmo,* 175 B.R. 775, 777 (Bkrtcy.S.D.Fla.1994) (citing *Quaif v. Johnson,* 4 F.3d at 954); *In re Hayes,* 183 F.3d 162, 168–70 (2d Cir.1999);

---

**5.** As discussed later, under *In re St. Laurent,* 991 F.2d 672 (11th Cir.1993), these non-dischargeable damages would include both com-

pensatory and punitive damages imposed by the New York Court for fraud.

*Matter of Bennett,* 989 F.2d 779, 784–85 (5th Cir.1993).

■ While the fact that a relationship is fiduciary under state law does not necessarily mean that it is a fiduciary relationship within the meaning of § 523(a)(4), if state law imposes the duties of a trustee on a party, then the party is a fiduciary for purposes of § 523(a)(4). *Quaif,* 4 F.3d at 953–54; *see also In re Regan,* 477 F.3d at 1211 ("While 'the existence of a fiduciary relationship under § 523(a)(4) is determined under federal law,' state law is relevant to this inquiry."); *In re Gupta,* 394 F.3d 347, 349–50 (5th Cir.2004) ("The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists."); *In re Cantrell,* 329 F.3d 1119, 1125–26 (9th Cir.2003) ("While the definition of 'fiduciary' is governed by federal law, we have relied in part on state law to ascertain whether the requisite trust relationship exists."). Accordingly, in order to qualify under § 523(a)(4), there must be an express or technical trust imposing trustee-like obligations on Appellant, and the court looks to New York state law to determine if those trustee-like obligations exist. *See In re Hosey,* 355 B.R. 311, 322 (Bkrtcy.N.D.Ala.2006).[6]

■ The Bankruptcy Court concluded that, per the findings of the Memorandum Decision and under New York law, such trustee-like obligations existed between Appellant and Mr. Stein. The Bankruptcy Court highlighted the factual findings of the New York State Court that Appellant and Mr. Stein were equal owners of Lone Hill, and that as shareholders in a close corporation the relationship between them was akin to that between partners and imposes a high degree of fidelity and good faith. Citing to New York Bankruptcy Court decisions that held that co-owners of a close corporation had fiduciary responsibilities to the business and to each other sufficient to satisfy § 523(a)(4), the Bankruptcy Court concluded that Appellant and Mr. Stein owed each other a fiduciary duty under § 523(a)(4).[7] I concur with the Bankruptcy Court.

In its Memorandum Decision, the New York Court discussed the fiduciary duties of business partners under New York law and quoted precedent in *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (N.Y. 1928) characterizing the relationship between business partners as a "trustee" relationship. The New York Court recognized that the *Meinhard* decision applied to partnerships, not closely held corporations, but stated, "It is a difference without a distinction and did not create an arms length relationship. Shareholders of a

---

**6.** Here, the question arises of whether New York state law or Florida state law applies in evaluating trust obligations. Appellees argue that because Lone Hill is a New York corporation, the court must look to New York law in deciding whether a fiduciary duty sufficient to satisfy § 523(a)(4) exists. While Appellant disagrees with the findings of the New York courts regarding existence of a fiduciary duty under § 523(a)(4), Appellant appears to agree, and I nonetheless conclude, that New York law applies to assessing the scope of the trust relationship between Appellant and Appellees. (*See* Appellant's Initial Brief, DE 8, pp. 16–18).

**7.** Citing *In re Phillips,* 185, B.R. 121 (Bankr. E.D.N.Y.1995), the Bankruptcy Court stated "State law determines when a fiduciary relationship exists for purposes of § 523(a)(4)." As discussed above, this is not an accurate statement. State law applies to determine the scope of the trust relationship between parties, but federal law governs the ultimate conclusion of whether that trust relationship constitutes a fiduciary relationship under § 523(a)(4).

closely held corporation can be considered fiduciaries towards one another. The relationship between shareholders in a close corporation, vis-a-vis each other, is akin to that between partners and imposes a high degree of fidelity and good faith." (Memorandum Decision, pp. 16–17). The Memorandum Decision went on to conclude, "The record before us demonstrates that Mr. McDowell had [a fiduciary] relationship with the decedent. It further showed that the individual defendant violated his duty to Mr. Stein (and subsequently to his estate) by self-dealing. His attempt to usurp Mr. Stein's ownership interest and conceal his own lack of contributions towards the business obliges the Court to grant judgment in plaintiffs' favor." (Memorandum Decision, p. 17). Thus the New York Memorandum Decision, which is to be given deference under principles of collateral estoppel, concluded that the relationship between Mr. Stein and Mr. McDowell was akin to that of partners and contained trustee-like obligations. *See also In re Atkins,* 1997 WL 375732, at *9(Bkrtcy.M.D.Fla.1997)("[U]nder New York partnership law, a technical trust is created for purposes of satisfying the fiduciary requirement of subsection 523(a)(4). Thus, as general partner ..., Defendant owed a fiduciary duty to the Plaintiffs in this consolidated proceeding, who were limited partners." (citation omitted)).

Similarly, New York bankruptcy courts have held that New York law imposes sufficient trustee-like obligations on co-owners of a closely held corporation to constitute a fiduciary duty under § 523(a)(4). *See In re Beeber,* 239 B.R. 13, 32 (Bkrtcy.E.D.N.Y.1999) (In discussing whether shareholders and directors of a close corporation have a fiduciary duty to other shareholders and directors of the corporation under § 523(a)(4), "cases following New York law have in fact found a fiduciary relationship sufficient to meet the threshold question."); *In re Phillips,* 185 B.R. 121, 129 (Bkrtcy.E.D.N.Y.1995) (holding that sole and equal owners of a corporation each had a fiduciary responsibility to the business and to each other under § 523(a)(4)).[8]

Appellant contends that these New York bankruptcy decisions were incorrectly decided, and urges me to rely on a Florida case, namely *In re Talmo,* 175 B.R. 775, 777 (Bkrtcy.S.D.Fla.1994), to determine whether Appellant had a fiduciary duty to Mr. Stein under § 523(a)(4). In *In re Talmo,* the bankruptcy court held that Fla. Stat. § 607.0830, which imposes certain fiduciary obligations upon officers and directors of a corporation, does not create an express trust relationship sufficient to satisfy § 523(a)(4).[9] While this arguably

---

8. In contrast, courts have held, applying non-New York law to the scope of the trust imposed, that directors and shareholders in a close corporation do not owe a fiduciary duty under § 523(a)(4). *See, e.g., In re Cantrell,* 329 F.3d 1119 (9th Cir.2003) (holding that under California law, a corporate officer is not a fiduciary under § 523(a)(4)); *In re Jones,* 306 B.R. 352, 356 (Bkrtcy.N.D.Ala. 2004) (holding that Alabama law does not impose sufficient trust obligations on a corporate officer and controlling shareholder of a closely held corporation to constitute a fiduciary duty under § 523(a)(4)); *In re Blackburn,* 209 B.R. 4, 9 (Bkrtcy.M.D.Fla.1997) ("As a matter of federal law, the fiduciary duties owed to a Florida corporation by its officer and director under state law are insufficient by themselves to constitute the 'fiduciary capacity' required under Section 523(a)(4) of the Bankruptcy Code.")

9. Specifically, Fla.Stat. § 607.0830, provides: (1) A director shall discharge his duties as a director, including his duties as a member of a committee: (a) In good faith; (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) In a manner he reasonably believes to be in the best interests of the corporation.

may be true for Fla. Stat. § 607.0830, and even more generally for corporate fiduciary obligations created by Florida law, the question here is not whether Florida law creates a trust relationship sufficient to satisfy § 523(a)(4). Rather, the question is whether New York law creates such a relationship. I conclude that, as held by the New York bankruptcy courts and the Bankruptcy Court below, New York law imposes sufficient trustee-like obligations to constitute a fiduciary duty under § 523(a)(4).

### 2. *Fraud or Defalcation*

The next step in determining dischargeability under § 523(a)(4) is to determine whether a fraud or defalcation occurred. Because the Bankruptcy Court only found non-dischargeability under § 523(a)(4) based on defalcation, I necessarily limit my analysis on appeal to defalcation. "Defalcation refers to a failure to produce funds entrusted to a fiduciary." *Quaif,* 4 F.3d at 955. The Bankruptcy Court concluded that Appellant's exclusion of the rightful owners (Appellees) from the use and operation of Lone Hill, thereby obtaining income from Lone Hill and withholding it from its rightful co-owner, constituted defalcation. The Bankruptcy Court also concluded that Appellant committed defalcation by self-dealing and by withholding income entrusted to him as a fiduciary and excluding the rightful co-owners from the business.

Defalcation under § 523(a)(4) is a question of federal law. To start, I note that in *Quaif v. Johnson,* the Eleventh Circuit evaluated the non-dischargeability of a debtor's obligation based on the debtor's failure to remit to the insurer premiums it had collected on behalf of the insurer. In discussing whether such obligation was dischargeable under § 523(a)(4), the Eleventh Circuit stated:

[T]he precise meaning of "defalcation" for purposes of § 523(a)(4) has never been entirely clear. An early, and perhaps the best, analysis of this question is that of Judge Learned Hand in *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir.1937). Judge Hand concluded that while a purely innocent mistake by the fiduciary may be dischargeable, a "defalcation" for purposes of this statute does not have to rise to the level of "fraud," "embezzlement," or even "misappropriation."

*Quaif,* 4 F.3d at 955. Applying this standard, the Eleventh Circuit held that debtor's transferring of funds from the insurance premium common account to the debtor's operating and payroll account was "far more than an innocent mistake or even negligence," and because debtor did not "seriously contest that the transfer was intentional," the failure to remit premiums to the insurer constituted a defalcation within the meaning of § 523(a)(4). *Id.*

Here, Appellant does not argue that Appellant's self-dealing and exclusion of the rightful owners from the use and operation of Lone Hill were purely innocent mistakes or the result of negligence. Rather, Appellant urges me to rely on Second Circuit precedent requiring a showing of conscious misbehavior or extreme recklessness for defalcation under § 523(a)(4), see *In re Hyman,* 502 F.3d 61, 68 (2d. Cir. 2007), and argues that the Memorandum Decision contains no factual findings regarding Appellant's state of mind and therefore cannot support a finding of defalcation.

Circuits vary as to the level of moral turpitude requires to constitute defalcation. As the Second Circuit summarized in *Hyman,* "The Fourth, Eighth, and Ninth Circuits hold that an innocent mistake can constitute a defalcation ..." The Fifth, Sixth, and Seventh Circuits require

a level of fault greater than mere negligence.... The Tenth Circuit's standard is not entirely clear but at least requires "some portion of misconduct." .... The First Circuit set the highest bar, requiring a showing of extreme recklessness, "akin to the level of recklessness required for scienter." *Id.* at 67–68 (citations omitted). The Second Circuit aligned itself with the high bar of the First Circuit, requiring "a showing of conscious misbehavior or extreme recklessness." *Id.* at 68.

While the Eleventh Circuit has not explicitly addressed whether defalcation requires a showing of conscious misbehavior or extreme recklessness, the *Quaif* opinion suggests that it would not. In *Quaif,* the Eleventh Circuit recognized the split of authority between those circuits requiring some level of willfulness or intent, and those holding a debt non-dischargeable due to negligent actions. In holding that Quaif's conduct constituted a defalcation, the Eleventh Circuit relied only on the finding that Quaif's conduct was not unintentional, purely innocent, or the result of negligence. It did not analyze whether Quaif acted with extreme recklessness, or whether he consciously misbehaved. *See, e.g., General Produce v. Tucker (In re Tucker),* 2007 WL 1100482, at *7 (Bkrtcy. M.D.Ga.2007) ("Debtor has argued defalcation requires an act of moral turpitude. However ... the Eleventh Circuit's opinion in Quaif [does not] support that argument. Consequently, the Court concludes bad faith is not a necessary element of defalcation. Instead, a debtor who knowingly and intentionally violated her fiduciary duties ... may be liable for defalcation."); *Eavenson v. Ramey,* 243 B.R. 160, 166–67 (N.D.Ga.1999) (referring to the Eleventh Circuit's holding in *Quaif,* "The

court went on to implicitly hold that although an act of defalcation does not have to rise to the level of fraud, it must be intentional; negligence or innocent mistake may not be enough."); *Houston v. Capps (In re Capps),* 193 B.R. 955, 963–966 (Bkrtcy.N.D.Ala.1995) ("While purely negligent defalcations and defalcations based on mistake of fact, according to some authorities, may not fall within the ambit of the statute, a defalcation, to give rise to a nondischargeable debt, does not have to be the result of intentional wrongdoing or have been motivated by criminal intent, ill will, malice, bad faith, or the subjective intent to violate a known fiduciary duty."). Accordingly, given the Eleventh Circuit's language and analysis in *Quaif v. Johnson,* I concur with the Bankruptcy Court that a defalcation occurred. Appellant's self-dealing and exclusion of the rightful owners from the use and operation of Lone Hill, resulting in the wrongful withholding of funds from the rightful owner, rises above a purely innocent mistake by a fiduciary and constitutes a failure to produce funds entrusted to a fiduciary. Therefore, to the extent the New York Court imposes damages for breach of fiduciary duty, such debt is non-dischargeable under § 523(a)(4).[10]

### D. *Section 523(a)(6)*

Appellant's final contention is that the Bankruptcy Court erred in concluding that the New York Memorandum Decision collaterally estopped Appellant from contesting dischargeability of debt under § 523(a)(6), which excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Appellant argues that the Memorandum Decision's imposition of pu-

---

**10.** As discussed later, under *In re St. Laurent,* 991 F.2d 672 (11th Cir.1993), these non-dischargeable damages would include both com-

pensatory and punitive damages imposed by the New York Court for breach of fiduciary duty.

nitive damages does not direct a finding of willful and malicious injury, and that Appellant's violation of a preliminary injunction does not requires a finding that damages assessed for such violation are non-dischargeable under § 523(a)(6).

### 1. *Punitive Damages*

■ As noted by the Bankruptcy Court, the New York Court expressly stated that it sanctioned Appellant with punitive damages because his conduct was willful and malicious. Appellant asserts that the Memorandum Decision may have imposed sanctions based on "morally culpable" or "actuated by evil and reprehensible motives," and such acts are not the same as "willful and malicious" ones. Contrary to Appellant's assertion, the New York Court was clear that it assessed punitive damages because of Appellant's willful and malicious conduct: "Where the act complained of is willful, malicious and wonton, punitive damages are sometimes available ... Applying this standard, the Court finds that punitive damages are justified." (Memorandum Decision, p. 18). Accordingly, § 523(a)(6) applies and the New York Court's award of punitive damages for willful and malicious conduct would be non-dischargeable.

■ Moreover, even if the punitive damages were dischargeable under § 523(a)(6), they would be non-dischargeable under §§ 523(a)(2) and (4). The New York Court imposed punitive damages for the fraud and breach of fiduciary duty counts only. (New York Judgment, pp. 8–9). Because I concur that damages im-

posed for fraud and breach of fiduciary duty are non-dischargeable under §§ 523(a)(2) and (4), respectively, punitive damages flowing from the same course of conduct are also non-dischargeable under those sections. *See In re St. Laurent,* 991 F.2d 672 (11th Cir.1993) ("[P]unitive damage awards flowing from the same course of fraudulent conduct necessitating an award of compensatory damages are not dischargeable in bankruptcy under § 523(a)(2)(A).".).[11]

### 2. *Preliminary Injunction*

Finally, I turn to the Bankruptcy Court's conclusion that damages imposed for violation of the preliminary injunction are non-dischargeable. Notwithstanding Appellant's claim that the Memorandum Decision does not contain a factual finding that Appellant violated the preliminary injunction, the Memorandum Decision specifically states, "Mr. McDowell is wrongfully holding himself out as sole owner and may burden the property or attempt to negotiate its sale or rental. The evidence was essentially uncontroverted on the question of the current use of property in violation of a preliminary injunction granted on January 2, 2002. The defendants are using the business and leasing the realty.... To safeguard the realty for plaintiffs, a permanent injunction will be issued." (Memorandum Decision, p. 21). Appellant attempts to create an ambiguity where there is none, asserting that the New York Court's use of "defendants" leaves open the possibility that Appellant McDowell has not violated the preliminary

---

11. The converse is also true-compensatory and punitive damages imposed as a result of Appellant's fraud and breach of fiduciary duty would be non-dischargeable under § 523(a)(6). Because the New York Court imposed punitive damages for the fraud and breach of fiduciary duty counts only, it must have determined that Appellant's actions in committing fraud and breach of fiduciary duty were "willful, malicious, and wonton." Thus debts incurred as a result of Appellant's fraud and breach of fiduciary duty are non-dischargeable under § 523(a)(6), independent of the non-dischargeability determinations under §§ 523(a)(2) and (4).

injunction. Reading the text in its entirety, though, and noting that the New York Judgment imposes a permanent injunction against "Warren McDowell and Lone Hill Properties" (New York Judgment, p. 7) to safeguard the realty for Appellees, it is clear that Appellant McDowell violated the preliminary injunction.

■ Appellant next attempts to distinguish *In re Allison,* 176 B.R. 60 (Bkrtcy. S.D.Fla.1994), a case relied upon by the Bankruptcy Court in holding that violation of a court order constitutes satisfies the "willfulness and malicious" standard and renders debt non-dischargeable under § 523(a)(6). In *In re Allison,* the bankruptcy court held that a state court contempt judgment, entered upon a finding that the debtor had violated a temporary injunction, was non-dischargeable under § 523(a)(6): "Failure to comply with court directives in an injunction order satisfies the condition of willful and malicious within 11 U.S.C. § 523(a)(6)." *Id.* at 64. Appellant attempts to distinguish the facts of *In re Allison,* arguing that the state court in *In re Allison* entered a contempt order based on substantial violation of the temporary injunction, and in Appellant's case, no contempt order was issued. I am not persuaded by Appellant's argument. Just as the debtor in *In re Allison* violated a court-ordered temporary injunction, Appellant violated a court-ordered preliminary injunction. Failure to comply with this court directive satisfies willful and malicious within 11 U.S.C. § 523(a)(6), and to the extent that the New York Court awards damages for violation of a preliminary injunction, such damages are non-dischargeable.

### D. *Procedural Posture*

Having affirmed the Bankruptcy Court's holding that Appellant is collaterally estopped from contesting the findings and conclusions of the New York Court in the Memorandum Decision and Judgment, I address the unique procedural posture of this case. The Referee appointed by the New York Court to calculate compensatory and punitive damages for the fraud and breach of fiduciary duty causes of action has held several evidentiary hearings but has not yet rendered a report on damages. Thus, even though my Order and the Order on Appeal hold damages for these causes of action non-dischargeable, the amount of damages is still to be determined. Additionally, the New York Memorandum Decision and Judgment have been appealed, but the New York Appeals are automatically stayed as a result of the bankruptcy. If the New York Memorandum Decision and Judgment are reversed on appeal, my Order and the Bankruptcy Court's Order on Appeal may need to be reevaluated.

■ Given the status of the damages calculation and the New York Appeals, I remand this case to the Bankruptcy Court to consider how best to proceed. I encourage the Bankruptcy Court to allow the New York Appeals to move forward by lifting the automatic stay imposed by the bankruptcy; the Bankruptcy Court may lift this stay *sua sponte* or upon motion of a party in interest. *See In re McDaniels,* 213 B.R. 197, 201 (Bkrtcy.M.D.Ga.1997) (Citing 11 U.S.C. § 105(a), "if it appears to the Court that a release of the automatic stay is necessary ... the Court may take that step *sua sponte,* without regard to the fact that no party in interest has made such a request"); 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the Court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement Court orders or rules, or to prevent an abuse of

process."). If the New York Appeals result in reversal or modification of the Memorandum Decision, Appellant may move the Bankruptcy Court for relief under Federal Rule of Civil Procedure 60(b)(5) and Bankruptcy Rule 9024, which provide relief from a final judgment where "it is based on an earlier judgment that has been reversed or vacated." Fed. R.Civ.P. 60(b)(5); Bankruptcy Rule 9024.

### E. *Motion to Strike*

Finally, I turn to Appellant's Motion to Strike, in which Appellant moves the Court to strike any references to the trial transcript because the Bankruptcy Court's Order on Appeal was based on a reading of the four corners of the Memorandum Decision. In affirming the Bankruptcy Court's Order on Appeal, I have considered only the Order on Appeal and the Memorandum Decision. I have not considered the trial transcript. Accordingly, I deny Appellant's Motion to Strike as moot.

### III. *Conclusion*

For the reasons stated above, I affirm the Bankruptcy Court's Order Granting Motion for Summary Judgment in Bankruptcy Adversary Case No. 07–11728–BKC–PGH. Accordingly, it is hereby

ORDERED AND ADJUDGED:

1 The Bankruptcy Court's Order Granting Motion for Summary Judgment in Bankruptcy Adversary Case No. 07–11728–BKC–PGH is AFFIRMED.

2. Appellant's Motion to Strike [DE 14] is DENIED AS MOOT.

3. This case is REMANDED to the Bankruptcy Court to take action consistent with this Order.

4. This case is CLOSED.