**In re Buddy Bryant PRESLEY and Kristy Lynn Brown–Presley, Debtors.**

**Old Republic National Title Insurance Company, Plaintiff,**

**v.**

**Buddy Bryant Presley and Kristy Lynn Brown–Presley, Defendants.**

**Bankruptcy No. 11–42363–MGD.**
**Adversary No. 12–4012–MGD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Feb. 19, 2013.

Brian G. Rich, Berger Singerman LLP, Tallahassee, FL, for Plaintiff.

Thomas B. Woodward, Thomas B. Woodward, Atty., Tallahassee, FL, Jacob J. Payne, Rogers Towers, P.A., Jacksonville, FL, Stephen G. Gunby, Columbus, GA, for Defendant.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MARY GRACE DIEHL, Bankruptcy Judge.

This adversary proceeding is before the Court on Buddy Bryant Presley ("Mr. Presley") and Kristy Lynn Brown–Presley's ("Ms. Presley") (collectively, "Defendants") Motion to Dismiss and for Summary Judgment ("Motion"). (Doc. No. 7). The Motion was filed in response to Old Republic National Title Insurance Company's ("Plaintiff") Complaint, in which Plaintiff alleges that Defendants' debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). (Doc. No. 1). Plaintiff filed an Amended Complaint ("Complaint"), to which Defendants filed an Answer. (Doc. Nos. 26, 28).

Defendants' Motion seeks to dismiss Counts I and II of the Complaint under Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this Court by Rules 7008, 7009(b) and 7012(b)(6) of the Federal Rules of Bankruptcy Procedure. The Motion also seeks summary judgment under Rule 56 of the Federal Rules of Civil Procedure, applicable to this Court by Rule 7056 of the Federal Rules of Bankruptcy Procedure, as to Ms. Presley, for all Counts in the Complaint. Plaintiff filed a Response to the Motion and Memorandum in support thereof asserting that the Complaint was sufficient under Rules 8, 9, and 12(b)(6) and that summary judgment was not appropriate as to Ms. Presley, except as to the objection under 11 U.S.C. § 523(a)(6), which relates to Count III of the Complaint. (Doc. Nos. 19–20).

Defendants replied to Plaintiff's Response and objected to the admissibility of portions of the Affidavits filed by Plaintiff in support of the Response and of Ms. Presley's Deposition. (Doc. No. 21). Both parties filed various affidavits, memoranda, and statements of facts in support of their positions. (Doc. Nos. 8–9, 15–19). The parties filed a Joint Status Report indicating that the Amended Complaint mooted

Defendants' argument for both the motion to dismiss and for summary judgment, in so far as it related to the property at 8004 Rosemere Way. (Doc. No. 31).

For the reasons stated below, the Court will deny Defendants' Motion to Dismiss and deny the Motion for Summary Judgment, except as to Count III, which Plaintiff has conceded should not apply to Ms. Presley. (Doc. No. 19).

## I. FACTS ALLEGED BY PLAINTIFF

Defendants were two members of Woilf, LLC ("Woilf") and were also involved in TVC, LLC d/b/a Gateway Title Company ("Gateway Title"). Gateway shared office space with Woilf and was owned by Defendant, Mr. Presley.

### A. Lots 77 and 78

Athens Federal ("Athens") gave loans to Woilf secured by the property referred to as Lot 77 and Lot 78 (collectively, "the Lots"). In accepting the Lots as collateral, Woilf represented to Athens and Plaintiff that the deed of trust was a first-priority lien on the property. Gateway Title was the title company involved in the transaction, and Gateway represented to Plaintiff that there were no senior liens on the property. Relying on this representation, Plaintiff issued a policy of title insurance, insuring the primacy of Athens' deed. Gateway Title acted as the closing agent for the transaction.

Subsequent to Plaintiff's issuance of the policy, Athens discovered a senior lien on the Lots. Due to their membership and involvement in Woilf, and their involvement in Gateway Title, Defendants knew that their representation to Plaintiff regarding the priority of the lien was false, and Plaintiff relied on this false representation.

### B. 8004 Rosemere Way

Defendants executed a promissory note and a deed of trust on the 8004 Rosemere Way property in favor of Novastar Mortgage, Inc. ("Novastar"), who assigned it to Ocwen Loan Servicing, LLC. Defendants executed a deed of trust in favor of U.S. Bank and Trust Company ("US Bank"). Gateway Title handled the closing. Defendants executed a deed of trust in favor of Gateway Bank & Trust ("Gateway Bank"), borrowing funds to purportedly refinance the Novastar mortgage. US Bank agreed to subordinate its lien to Gateway Bank. Mr. Presley issued the title policy to Gateway Bank as an agent of Plaintiff, insuring Gateway Bank's priority. The Novastar mortgage remained outstanding. Defendants transferred this property to Woilf by quitclaim deed. Subsequently, Defendants, as members of Woilf, refinanced the Gateway Bank loan, but U.S. Bank did not agree to subordinate its lien to the new mortgage. Defendants represented to Gateway Bank that its new lien was a first lien on the property. Mr. Presley, as agent for Plaintiff, issued a title policy insuring Gateway Bank's priority. Throughout these transactions, Defendants knew that senior liens existed and made false representations regarding the priority of the insured liens, and Plaintiff relied on those false representations.

### C. Lot 24 Stormy Hollow Estates

Mr. Presley's brother, James Presley, through Sterling Classic Homes, LLC ("Sterling"), executed a promissory note secured by a deed of trust on Lot 24, in favor of Gateway Bank. Gateway Title handled the closing. Gateway Title and Sterling represented that Gateway Bank had a first lien on the property. Plaintiff, through Gateway Title, furnished titled insurance to Gateway Bank. A senior lien existed on the property. Gateway Title knew or should have known about the senior lien. Defendants, through their

membership in Gateway Title, had knowledge of the false representation. Plaintiff relied on the false representation in issuing the title insurance.

### D. Lots 3, 4, 8–13 and 46–48 Stormy Hollow Estates Transactions

Crosswinds Properties, LLC ("Crosswinds") executed a promissory note secured by a deed of trust on Lots 3, 4, 8–13 and 46–48, in favor of Regions Bank for a development loan. Both Defendants were principles of Crosswinds. Defendants sold the lots without paying the release fee. Plaintiff, through Gateway Title, furnished title insurance for the buyers of the lots and the buyers' mortgage companies. Defendants knew or should have known that Regions Bank's lien had not been released, and Plaintiff relied on the contrary representations.

### E. 1010 Georgia Avenue

SBA Investments GA Avenue, LLC, executed a deed of trust on 1010 Georgia Avenue in favor of "Buddy Presley, Jr., Trustee" to secure a promissory note payable to Gateway Bank. Plaintiff issued title insurance to Gateway Bank. Gateway Title and/or Mr. Presley failed to pay certain taxes and fees due on the property. Gateway Bank conducted a foreclosure on the property and was forced to pay the taxes and fees. Defendants knew or should have known that the taxes and fees were not paid and Plaintiff relied on the contrary representations. Plaintiff alleges total damages of not less than $919,545.00 resulting from the above described transactions.

## II. EVIDENCE TO BE REVIEWED ON SUMMARY JUDGMENT

### A. The Affidavits of Leslie Spearman and Kyle Gilreath

The Affidavits of Leslie Spearman ("Ms. Spearman") and of Kyle Gilreath ("Mr.

Gilreath") attest to Ms. Presley's involvement in both the administrative and financial activities of Gateway Title (collectively, "Plaintiff's Affidavits"). Defendants objected to the admissibility of Plaintiff's Affidavits based on a lack of personal knowledge. Without ruling on the admissibility of all the statements in Plaintiff's Affidavits, the Court finds that there was sufficient testimony based on personal knowledge to support the affiants' assertions that Ms. Presley was involved in Woilf, Crosswinds Properties, LLC ("Crosswinds"), and Gateway Title.

Ms. Spearman worked for Gateway Title from 2006 through 2010. She states that Ms. Presley was the operations and administrative supervisor for Gateway Title during part of the time while Ms. Spearman worked there. From 2007 through 2010, Ms. Presley came into the office several times per week. Throughout her employment, Ms. Presley inquired about administrative duties, finances, and payment of bills for Gateway Title and Woilf. Additionally, Ms. Spearman states that Ms. Presley was present when Ms. Spearman discussed account shortages with Mr. Presley.

Mr. Gilreath states that in 2006, he and his wife became partners with Defendants in Crosswinds. In 2009, they transferred their interest in Crosswinds to Ms. Presley, making her a 75% owner. While he was in business with the Presleys, Ms. Presley was regularly involved in Gateway Title's operations, except for a three month period in 2007. Ms. Presley told him in 2008 that she was in charge of the books, and in 2010, she stated to him that she was "in charge of the finances."

### B. Affidavits of Defendants

Ms. Presley states in her Affidavit that she terminated her involvement in both

Gateway Title and Woilf in May of 2007 and that she was also not involved with the construction loans or any of the refinancing of the loans. She did, although rarely, sign escrow checks when Mr. Presley was unavailable. She reviewed Gateway's expenses, but only after the shortages resulting from the transactions at issue were revealed to her in 2010. She made no representations to Plaintiff regarding the title insurance policies.

Mr. Presley states in his Affidavit that he and Ms. Presley were co-owners of Gateway Title, which was acting as agent for Plaintiff in issuing title insurance policies. He makes no further statements regarding Ms. Presley's involvement in the transactions at issue.

## III. DISCUSSION

### A. Motion to Dismiss

Rule 12(b)(6) permits a defendant in an adversary proceeding to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); FED. BANKR. P. 7012. In determining whether a complaint states a claim upon which relief can be granted, the Court must accept as true the complaint's factual allegations. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Daewoo Motor America, Inc. v. General Motors Corp.,* 459 F.3d 1249 (11th Cir.2006). The complaint must contain "sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclu-

sory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

Additionally, when alleging fraud, a plaintiff must comply with Rule 9(b) of the Federal Rules of Civil Procedure. *Perkins v. Crown Financial, LLC (In re International Management Associates, LLC),* 2007 WL 7141787, *2 (Bankr. N.D.Ga.2007). Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake," thereby alerting defendants "to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" FED.R.CIV.P. 9(b); *Kipperman v. Onex Corp.,* 2007 WL 2872463, *6 (N.D.Ga.2007) (quoting *Durham v. Bus. Management Assocs.,* 847 F.2d 1505, 1511 (11th Cir.1988)).

Rule 9(b) further provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Therefore, proving actual "intent" under § 548(a)(1)(A) does not require direct proof. *In re XYZ Options, Inc.,* 154 F.3d 1262, 1271 (11th Cir.1998). Rather, plaintiffs may plead circumstantial evidence from which the court may infer intent. *Id.*

#### 1. False Pretenses and False Representation under 11 U.S.C. § 523(a)(2)(A)

Count I of the Complaint alleges that the debt owed to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) excludes from discharge debts obtained through "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

The elements of such a claim are the same as required for common law fraud. They are as follows: "(1) the debtor made a false representation with the intention of deceiving the creditor; (2) the

creditor relied on the false representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the false representation." *In re Wood,* 245 Fed.Appx. 916, 917–18 (11th Cir.2007). The Court in *In re Wood* explained,

> The concept of false pretenses is especially broad … encompassing any intentional fraud or deceit practiced by whatever method in whatever manner. [It] may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak … or [of the creation of] a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor…. [or] silence or concealment as to a material fact…. [F]alse pretenses [also] contemplate[s] a misrepresentation that is intentional or made with reckless indifference to the truth.

*Id.* at 918 (quoting in part *In re Gilmore,* 221 B.R. 864, 872 (Bankr.N.D.Ala.1998)).

■ Here, Plaintiff has alleged sufficient facts to state a claim under § 523(a)(2)(A) to withstand the motion to dismiss and to satisfy the heightened pleading standard of Rule 9(b). Plaintiff detailed various transactions, identifying the specific misrepresentations made by Defendants and/or the LLC's in which Defendants were alleged to have been involved. Specifically, Plaintiff alleged that Defendants misrepresented that senior liens either did not exist or would be paid off, or that taxes and fees would be paid off on the property. Plaintiff reasonably relied on these alleged misrepresentations in issuing title insurance and was damaged thereby.

### 2. Fraud or Defalcation under 11 U.S.C. § 523(a)(4)

■ Count II of the Complaint alleges that the debt owed to Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(4). Section 523(a)(4) excludes from discharge debts obtained through fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4). Rule 9's heightened pleading standard does not apply to allegations of embezzlement or larceny under this section. *In re Brown,* 457 B.R. 919, 926 (Bankr.M.D.Ga.2011).

■ Defalcation is "a failure to produce funds entrusted to a fiduciary," but "does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'" *Quaif v. Johnson,* 4 F.3d 950, 955 (11th Cir.1993). "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Brown,* 457 B.R. at 926. To establish a claim of embezzlement, "a plaintiff must show an appropriation by the debtor of funds lawfully in the debtor's possession, for the debtor's use or benefit, with fraudulent intent." *Id.*

■ As to the element of fiduciary duty, the United States Supreme Court has articulated a narrow definition of "fiduciary," holding that the trust upon which the fiduciary relationship relies must be an express or technical trust. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934). However, the trust requirement is not limited to a formal, contractual trust. Rather, it can include relationships in which "trust type obligations are imposed pursuant to statute, or potentially by common law." *McDowell v. Stein,* 415 B.R. 584, 594 (S.D.Fla.2009). While the meaning of a fiduciary under § 523(a)(4) is a question of federal law, courts look to state law to determine if a trustee-like relationship ex-

ists. *E.g. Quaif,* 4 F.3d at 953–4; *McDowell,* 415 B.R. at 594.

■■■■■ Under Georgia law, "[t]he relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." Ga.Code Ann. § 10–6–1 (2012). An agent owes a fiduciary duty to his principal. *Wright v. Apartment Inv. & Mgmt. Co.,* 315 Ga.App. 587, 592, 726 S.E.2d 779 (Ga.Ct.App.2012), *reconsideration denied* (Apr. 12, 2012), *cert. denied* (Oct. 29, 2012). This duty precludes an agent from profiting from the relationship or out of knowledge obtained through the relationship, to the principal's detriment. *White v. Shamrock Bldg. Systems Inc.,* 294 Ga.App. 340, 346, 669 S.E.2d 168 (Ga.Ct. App.2008). Here, Plaintiff has alleged facts showing both Defendants' involvement in Gateway Title, which served as Plaintiff's agent in issuing the title insurance policies. While at trial, Plaintiff may ultimately have a greater hurdle to overcome in proving that a fiduciary relationship existed for purposes of § 523(a)(4), the allegations are sufficient to withstand the Motion to Dismiss. (*See In re Fernandez–Rocha,* 451 F.3d 813, 819 (11th Cir.2006) (holding that the fiduciary element was not satisfied where the statute did not explicitly create fiduciary duties)).

While acting in this fiduciary capacity, Plaintiff alleges that Defendants misappropriated the proceeds of the Gateway Bank refinance loan on the 8004 Rosemere Way property and obtained title insurance in that transaction and all others by making false representations. Even if the heightened pleading standard of Rule 9(b) applies, Plaintiff has stated with particularity the allegations concerning the allegedly fraudulent transactions and Defendants' involvement in those transactions while acting as fiduciaries. Accordingly, Plain-

tiff has pled sufficient facts to withstand the Motion to Dismiss as to Count II.

## B. Summary Judgment

Under Rule 56, summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); FED. BANKR. P. 7056. "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). When the nonmoving party bears the burden of proof at trial, the burden can be satisfied if the moving party demonstrates the absence of evidence supporting the nonmoving party's case. *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1259 (11th Cir.2004). In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). The moving party retains the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■■■ While the Court acknowledges that allegations of fraud cannot be "aimlessly levied against multiple defendants," here Defendants have not met their burden to show that there is no disputed issue

of material fact as to Ms. Presley's involvement in the conduct giving rise to the nondischargeability action. *In re Brown,* 457 B.R. at 926. As previously discussed, Plaintiff's Affidavits make specific allegations as to Ms. Presley's involvement in Gateway Title, Woilf, and Crosswinds. Although Defendants dispute her involvement, the facts are just that—disputed. Where material facts are disputed, summary judgment is not appropriate.

Accordingly, for the reasons stated herein, it is **ORDERED** that Defendants' Motion to Dismiss is **DENIED** and the Motion for Summary Judgment is **DENIED** except as to Count III, the claim brought under 11 U.S.C. § 523(a)(6).

The Clerk shall serve a copy of this Order upon Plaintiff, counsel for Plaintiff, Defendants, and counsel for Defendants.